IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TRUE VALUE COMPANY, | ) | CIVIL NO. 16-00237 JMS-RLP |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION TO |
| | ) | GRANT PLAINTIFF TRUE VALUE |
| vs. | ) | COMPANY'S MOTION FOR ENTRY OF |
| | ) | DEFAULT JUDGMENT AGAINST |
| JOHN HILLS, | ) | DEFENDANT JOHN HILLS AND FOR |
| | ) | ORDER OF PERMANENT INJUNCTION |
| Defendant. | ) | AND TRANSFER OF INFRINGING |
| | ) | DOMAIN NAME |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF TRUE
VALUE COMPANY'S MOTION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST DEFENDANT JOHN HILLS AND FOR ORDER OF PERMANENT
INJUNCTION AND TRANSFER OF INFRINGING DOMAIN NAME[1]

Before the Court is Plaintiff True Value Company's

Motion for Entry of Default Judgment Against Defendant John Hills

and for Order of Permanent Injunction and Transfer of Infringing

Domain Name, filed on October 14, 2016 ("Motion"). ECF No. 27.

The Court found the Motion suitable for disposition without a

hearing pursuant to Rule 7.2(d) of the Local Rules of Practice of

the United States District Court for the District of Hawaii. ECF

No. 28. After careful consideration of the Motion, the

declaration, exhibits, and the record established in this action,

the Court FINDS AND RECOMMENDS that the Motion be GRANTED.

_____

[1] Within fourteen days after a party is served with a copy
of the Findings and Recommendation, that party may, pursuant to
28 U.S.C. § 636(b)(1), file written objections in the United
States District Court. A party must file any objections within
the fourteen-day period allowed if that party wants to have
appellate review of the Findings and Recommendation. If no
objections are filed, no appellate review will be allowed.

BACKGROUND

Plaintiff is a retailer-owned hardware cooperative with over 5,000 independent retail locations worldwide.  See ECF No. 10 ¶ 6.  Plaintiff owns several U.S. Trademark Registrations for GREEN THUMB marks related to various gardening products and equipment.  Id. ¶ 7 (listing over twenty registrations for GREEN THUMB dating from 1953 to 2012).  Since 1952, Plaintiff has been using the GREEN THUMB mark commercially in connection with gardening tools and has expanded its use of the GREEN THUMB mark over the years to include a wide variety of gardening and lawn care products and equipment.  Id.  Plaintiff's customers across the country use and rely on Plaintiff's products sold under the GREEN THUMB mark.  Id. ¶ 9.  The GREEN THUMB mark is distinctive as a trademark for Plaintiff's products in the garden retailing and lawn care industry.  Id. ¶ 10.  The GREEN THUMB mark is recognized and relied upon as identifying Plaintiff as the sole source of products for consumers and as distinguishing Plaintiff's products.  Id. ¶ 11.  As a result, the GREEN THUMB mark has acquired substantial goodwill and is an extremely valuable commercial asset.  Id.

Defendant's domain name, greenthumbgarden.com, registered on November 1, 1999, is nearly identical to, and fully incorporates, Plaintiff's GREEN THUMB mark.  Id.  Defendant's domain name provides commercial links to other websites offering

2

goods and services relating to gardening and lawn care products, including links to Plaintiff's competitors.  Id. ¶ 14.  Clicking the links on Defendant's domain name takes consumers directly to Plaintiff's competitors' websites, which offer products that compete with products offered by Plaintiff under its GREEN THUMB mark.  Id.

Defendant had constructive notice of Plaintiff's trademark rights in the GREEN THUMB mark prior to registration of Defendant's domain name based on Plaintiff's application to register the GREEN THUMB mark with the United States Patent and Trademark Office.  Id. ¶ 15.  Plaintiff has also given notice of its registered rights in the GREEN THUMB mark by using the ® symbol in connection with its trademark.  Id.  Defendant was given actual notice of Plaintiff's trademark rights in the GREEN THUMB mark in May 2015 when Defendant received a letter from Plaintiff's counsel specifically putting Defendant on notice of Plaintiff's rights in the GREEN THUMB mark.  Id. ¶ 16.  Defendant has failed to discontinue use of the domain name or stop advertising goods of, and providing links to, Plaintiff's competitors on his website.  Id.  Defendant is aware of the valuable goodwill and reputation represented by Plaintiff's GREEN THUMB mark.  Id. ¶ 17.  Defendant also is aware that Plaintiff's consumers and potential consumers rely upon Plaintiff's GREEN THUMB mark as distinguishing Plaintiff's gardening and lawn care products from the products and services of others.  Id.

Defendant's use of the GREEN THUMB mark is without the
permission, consent, or authority of Plaintiff.  Id. ¶ 18.
Defendant is not commonly known by his domain name.  Id. ¶ 19.
Rather, the domain name is a parking page, i.e., a domain name
that resolves to a website containing advertising listings and
links.  Id.  Defendant commercially benefits from the domain name
by profiting from the offered links which are tied to pay-per
click advertising for gardening and lawn care products and
related services.  Id.  Defendant owns multiple domain names,
engages in the business of "domain monetization," and employs
parking pages as "part of a universal process for all [his]
domains."  Id.  Defendant's website does not provide gardening
tips or information and facts about gardening.  Id.  It was not
created as and is not a website that is useful to gardening
enthusiasts or those with an aptitude for gardening activities.
Id.

Defendant's domain name fully incorporates Plaintiff's
well-known and distinctive GREEN THUMB mark, making them highly
similar in overall appearance, sound, and meaning.  Id.  The
links provided at Defendant's domain name offer the same or
related goods as those offered by Plaintiff under its GREEN THUMB
mark.  Id.  Defendant's use of the term "garden" does not
significantly alter the overall commercial impression of the
mark, especially because "garden" merely describes the type of
goods being sold under the GREEN THUMB mark.  Id.  Consumers are

4

likely to be confused by the use of the GREEN THUMB mark and
derivatives of that mark on or in connection with gardening and
lawn care products and retail store services featuring gardening
and lawn care products.  Id.  Defendant's unauthorized use of the
GREEN THUMB mark is also likely to cause confusion or mistake or
to deceive consumers into believing that Defendant's website is
sponsored, licensed, or authorized by, or affiliated, connected,
or otherwise associated with Plaintiff or that Plaintiff's
products offered under Plaintiff's GREEN THUMB mark are
sponsored, licensed, or authorized by, or affiliated, connected,
or otherwise associated with Defendant.  Id. ¶ 21.

Defendant benefits from this confusion because use of a
domain name that is nearly identical to Plaintiff's GREEN THUMB
mark generates Internet traffic and thus increases Defendant's
profits.  Id. ¶ 22.  Both Plaintiff and Defendant use the
Internet as a way to access consumers interested in purchasing
gardening and lawn care products.  Id.  The same consumers that
seek Plaintiff and its GREEN THUMB products and related services
are likely to be misled by Defendant and drawn to his website.
Id.  Defendant's use of a confusingly similar domain name
essentially attracts users looking for information pertaining to
Plaintiff's GREEN THUMB gardening and lawn care products and then
redirects them to various links to gardening and lawn care
products and services unrelated to Plaintiff's products,

including Plaintiff's competitors.  Id.  Defendant's use of the

GREEN THUMB mark in his domain name has diminished and is likely

to continue to diminish the goodwill associated with Plaintiff's

GREEN THUMB mark.  Id. ¶ 23.  Defendant's domain name has been

associated with malware.  Id.  Any association between Plaintiff

or Plaintiff's GREEN THUMB mark and malware has harmed the

reputation and goodwill of Plaintiff and its GREEN THUMB mark.

Id.

Defendant's registration of his domain name that is

confusingly similar to Plaintiff's federally registered GREEN

THUMB mark evidences bad faith.  Id. ¶ 24.  Defendant had

constructive knowledge of the GREEN THUMB mark when he registered

the greenthumbgarden.com domain name.  Id.  Defendant's intent in

creating the domain was to divert consumers seeking information

relating to Plaintiff's GREEN THUMB products to Defendant's

website for Defendant's own commercial gain.  Id.  Defendant's

acts were malicious, fraudulent, deliberate, willful,

intentional, and in bad faith, with full knowledge and conscious

disregard of Plaintiff's rights.  Id. ¶ 31.  Defendant's

continued use of his domain name and the GREEN THUMB mark is with

full knowledge of the prior ownership by Plaintiff of Plaintiff's

GREEN THUMB mark and Plaintiff's rights to use and control that

mark.  Id. ¶ 25.  Defendant has acted and continues to act

without regard to Plaintiff's property rights and goodwill.  Id.

¶ 26.

As a result of Defendant's unauthorized use of the GREEN THUMB mark and derivatives of that mark, Defendant is being unjustly enriched at Plaintiff's expense, and Plaintiff is being damaged. Id. ¶ 27. Defendant's unauthorized use of the GREEN THUMB mark and derivatives of that mark in association with gardening and lawn care products has significantly injured Plaintiff's interests and will continue to do so.

Plaintiff filed its Complaint against Defendant alleging trademark infringement, violations of federal and state unfair competition/deceptive trade practices, and violations of federal and state anti-cybersquatting laws on May 16, 2016. See ECF Nos. 1, 10. After Plaintiff was unable to effect personal service on Defendant, Defendant was served via publication pursuant to Hawaii Revised Statutes Section 634-35. ECF No. 22. After Defendant failed to respond to the Complaint, the Clerk of Court entered default against Defendant on October 11, 2016. See ECF No. 25. The present Motion followed seeking default judgment, entry of a permanent injunction, and the transfer of Defendant's domain name, www.greenthumbgarden.com, to Plaintiff. See ECF No. 27.

## ANALYSIS

Default judgment may be entered for the plaintiff if the defendant has defaulted by failing to appear and the

plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]"  Fed. R. Civ. P. 55(b)(1), (2). The granting or denial of a motion for default judgment is within the discretion of the court.  Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986).  Entry of default does not entitle the non-defaulting party to a default judgment as a matter of right.  Valley Oak Credit Union v. Villegas, 132 B.R. 742, 746 (9th Cir. 1991).  Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible.  Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court should consider the following factors in deciding whether to grant a motion for default judgment:

> (1)   the possibility of prejudice to the plaintiff;
>
> (2)   the merits of plaintiff's substantive claim;
>
> (3)   the sufficiency of the complaint;
>
> (4)   the sum of money at stake in the action;
>
> (5)   the possibility of a dispute concerning material facts;
>
> (6)   whether the default was due to excusable neglect; and
>
> (7)   the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471-72.

On default "the factual allegations of the complaint,

8

except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

## A.   Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether or not it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

First, the Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121, and has supplemental jurisdiction over Plaintiff's

state law claims pursuant to 28 U.S.C. § 1367.   Second, the Court

has personal jurisdiction over Defendant because Plaintiff

alleges that Defendant is a resident of Hawaii, ECF No. 10 ¶ 5,

and Defendant was served by publication in accordance with Hawaii

Revised Statutes Section 634-36.   See ECF No. 30.

## B.   Eitel Factors

Following a determination that jurisdiction is proper,

the Court must consider whether default judgment is appropriate

under the Eitel factors outlined above.

### 1.   The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would

suffer prejudice if default judgment is not entered.   See

PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D.

Cal. 2002).   Here, absent entry of default judgment, Plaintiff

would be without another recourse for recovery.   Accordingly, the

first Eitel factor favors default judgment.

### 2.   Merits of Plaintiff's Substantive Claims

As noted above, for purposes of liability the factual

allegations in the complaint are taken as true on default.   See

TeleVideo Sys., Inc., 826 F.2d at 917-18; Fair Hous. of Marin,

285 F.3d at 906.   Here, the allegations in Plaintiff's Complaint,

taken as true, establish that Plaintiff is entitled to default

judgment against Defendant on all claims.

### A. Cybersquatting

10

To prevail on its claim of cybersquatting under federal law, Plaintiff must show that:  "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'"  <u>Rearden LLC, v. Rearden Commerce, Inc.</u>, 683 F.3d 1190, 1219 (9th Cir. 2012) (citation omitted); Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Under Hawaii law, a person is liable for cybersquatting "if that person in bad faith:  registers, traffics in, or uses a domain name that is identical or confusingly similar to" any distinctive mark registered and used in Hawaii.  Haw. Rev. Stat. § 481B-22.

Plaintiff's Complaint establishes the required elements for cybersquatting under federal and state law.  Defendant registered the domain name, greenthumbgarden.com, on November 1, 1999.  ECF No. 10 ¶ 13.  Plaintiff owns numerous U.S. Trademark Registrations for the GREEN THUMB mark.  <u>Id.</u> ¶ 7.  Defendant's domain name is nearly identical to, and fully incorporates Plaintiff's mark.  <u>Id.</u> ¶ 13.  Because Defendant's website provides commercial links to websites offering goods and services relating to gardening and lawn care products and to Plaintiff's competitors, Defendant's use of the mark is likely to cause consumer confusion.  <u>Id.</u> ¶¶ 14, 20, 22.  Defendant acted in bad faith with the intent to profit from the GREEN THUMB mark because

11

he had constructive and actual notice of Plaintiff's trademark
rights.  Id. ¶¶ 15, 16.  Defendant benefits from consumer
confusion because use of a domain name that is nearly identical
to Plaintiff's GREEN THUMB mark generates Internet traffic and
thus increases Defendant's profits.  Id. ¶ 22.  Based on the
allegations in Plaintiff's Complaint, Plaintiff is entitled to
default judgment against Defendant on Plaintiff's cybersquatting
claims.

### B. Trademark Infringement

A claim under the Trademark Act of 1946 requires
Plaintiff to establish that its mark is valid and has been
infringed.  See 15 U.S.C. § 1114.  Registration of a mark on the
principal register is "prima facie evidence . . . of the
registrant's ownership of the mark, and of the registrant's
exclusive right to use the registered mark in commerce."  15
U.S.C. § 1115(a)(2012); Levi Strauss & Co. v. Blue Bell, Inc.,
778 F.2d 1352, 1354 (9th Cir. 1985).  The test for infringement
is whether the alleged infringing act creates a likelihood of
confusion.  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763,
769 (1992); Academy of Motion Picture Arts & Sciences v. Creative
House Promotions, Inc., 944 F.2d 1446, 1454-55 (9th Cir. 1991).
To determine the likelihood of confusion, the court must balance
the following factors:  (1) strength of the mark; (2) proximity
of the goods; (3) similarity of the marks; (4) evidence of actual

confusion; (5) marketing channels used; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the mark; and (8) likelihood that the parties will expand their product lines. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979).

Here, the validity of Plaintiff's registered GREEN THUMB mark is alleged in the Complaint. ECF No. 10 ¶¶ 7-8. Based on the allegations in the Complaint, there is a strong similarity of the marks, a strong proximity between the goods offered by Defendant and Plaintiff, and identical marketing channels. See id. ¶¶ 6, 9, 12-14, 20, 22. Additionally, Plaintiff alleges that Defendant's actions evidence his willful infringement of Plaintiff's mark. Id. ¶¶ 14-16, 20, 22. Although Plaintiff does not make any allegations regarding actual confusion or degree of care, on balance the factors weigh in favor of finding that Defendant's use of Plaintiff's mark creates a likelihood of confusion. Accordingly, Plaintiff is entitled to default judgment against Defendant on Plaintiff's trademark infringement claim.

### C. Unfair Competition

To prevail on a claim for unfair competition under federal law, a plaintiff must show that the defendant used a word, term, or name in commerce in connection with goods or

13

services, and that such use is likely to cause confusion or mistake as to the defendant's goods or services.  <u>See</u> 15 U.S.C. § 1125(a); <u>Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.</u>, 616 F.2d 440, 443 (9th Cir. 1980) ("Likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.").  Under state law, a claim for unfair and deceptive trade practices requires a plaintiff to show that the defendant caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services or as to affiliation, connection, or association with another.  <u>See</u> Haw. Rev. Stat. § 481A-3.

Here, Plaintiff alleges that Defendant's use of Plaintiff's mark will likely lead consumers to mistakenly believe that Plaintiff approved or endorsed such use.  <u>See</u> ECF No. 10 ¶¶ 17, 20-28.  Plaintiff alleges that Defendant's actions have resulted in confusion as to the source, sponsorship, or affiliation of Defendant's website and the links to goods and services provided on that website.  <u>Id.</u> ¶¶ 20-28, 52-58.  Based on these allegations, Plaintiff has established its federal and state law claims for unfair competition and unfair and deceptive trade practices.

After considering the allegations in the Complaint,

14

this factor weighs in favor of default judgment because the allegations, taken as true, are sufficient to establish Plaintiff's claims.

### 3.    Sufficiency of the Complaint

The allegations in the Complaint are sufficiently pled and supported by the documents filed with the Complaint and the Motion.  The Court finds that the sufficiency of the Complaint weighs in favor of default judgment.

### 4.    Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (citing Eitel, 782 F.2d at 1472). Here, Plaintiff does not seek an award of monetary damages.  See ECF No. 27-3 at 19.  Accordingly, the Court finds that this factor weighs in favor default judgment.

### 5.    Possibility of Dispute Concerning Material Facts

As noted above, the well-pled factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true. TeleVideo Sys., Inc., 826 F.2d at 917-18. Defendant has been given a fair opportunity to defend this action; Defendant has not done so.  Because no dispute has been raised regarding Plaintiff's material factual allegations, this factor favors default judgment.

**6.   Whether Default was Due to Excusable Neglect**

The Court finds that Defendant's default was not the result of excusable neglect.  Defendant failed to defend this action and default was entered against him.  <u>See</u> ECF No. 25.  The record suggests that Defendant's default was not the result of any excusable neglect, but rather due to Defendant's conscious and willful decision not to defend this action.  Consequently, this factor favors default judgment.

**7.   Policy Favoring Decisions on the Merits**

Defendant's default makes a decision on the merits impractical, if not impossible.  Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  <u>PepsiCo., Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh <u>Eitel</u> factor is not alone dispositive").  Here, Defendant has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable.  This factor does not preclude the Court from entering default judgment against Defendant.

**8.   Totality of <u>Eitel</u> Factors**

The Court finds that the totality of the factors weigh in favor of entering default judgment in Plaintiff's favor and against Defendant.

## C. Remedies

Although Defendant's default establishes his liability, it does not establish the amount of damages or other relief to which Plaintiff is entitled.  See Fair Hous. of Marin, 285 F.3d at 906.  Plaintiff must provide evidence to support its requested relief and the relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Here, Plaintiff requests that the Court issue a permanent injunction prohibiting any use by Defendant of Plaintiff's GREEN THUMB mark, order that Defendant's domain name be transferred to Plaintiff, and award Plaintiff its attorneys' fees.  ECF No. 27-3 at 22-26.

First, regarding the requested permanent injunction, "the district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner."  Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)).  To be entitled to a permanent injunction, Plaintiff must demonstrate:  (1) actual success on the merits; (2) a likelihood of irreparable injury; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance the public interest.  Winter v. Natural Res. Def. Counsel, 555 U.S. 7, 20 (2008).  Here, Plaintiff has demonstrated actual success on the

17

merits of its trademark infringement and cybersquatting claims. If an injunction were not granted, Plaintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers.  Furthermore, the balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendant's infringing activities.  Finally, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc., 559 F.3d 985, 993 n.5 (9th Cir. 2009).  Accordingly, the Court concludes that Plaintiff is entitled to a permanent injunction.

Second, regarding the transfer of Defendant's domain name, under the Anti-Cybersquatting Consumer Protection Act, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(C).  As detailed above, the Court has already determined that Defendant has violated the Anti-Cybersquatting Consumer Protection Act.  Accordingly, Plaintiff is entitled to an order that Defendant transfer ownership of the domain name to Plaintiff.

Finally, regarding Plaintiff's request for an award of attorneys' fees, such an award "is expressly provided for in 'exceptional cases' of trademark infringement." Derek Andrew,

Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) (citing 15 U.S.C. § 1117(a)).  "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." Id. (citation omitted).  For purposes of awarding attorneys' fees on a motion for default judgment, the Ninth Circuit has held that the plaintiff's allegations are sufficient to demonstrate that the defendant's acts were malicious, deliberate, and willful. Id. (citation omitted).  Here, Plaintiff alleges that Defendant's acts were malicious, fraudulent, deliberate, willful, intentional, and in bad faith.  See ECF No. 10 ¶ 31. Accordingly, the Court concludes that Plaintiff is entitled to an award of attorneys' fees.  No later than December 12, 2016, Plaintiff shall submit a declaration with the appropriate supporting materials detailing the fees requested.  Thereafter, the Court will issue a further findings and recommendation regarding the award of attorneys' fees in this case.

## CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiff True Value Company's Motion for Entry of Default Judgment Against Defendant John Hills and for Order of Permanent Injunction and Transfer of Infringing Domain Name be GRANTED as follows:

(1)  Default judgment be entered in Plaintiff's favor

and against Defendant John Hills;

(2)   Defendant John Hills is prohibited from directly or indirectly utilizing the name GREEN THUMB in any manner, including without limitation, as trademarks, service marks (or any other type of designation), trade names, business names, designations, descriptors, product identity statements, domain names, email addresses, keywords, or metatags, on products, packaging, or shipping containers, in product literature, promotional literature, or advertisements, on websites, Internet sites, online auctions or social networking sites.  Defendant John Hills shall remove all references to or use of the GREEN THUMB mark and any mark, name, or designation that infringes any GREEN THUMB mark from any and all domain names, websites, Internet sites, online auction sites, social networking sites and other online applications containing content directly or indirectly under his control.[2]

(3)   The domain name www.greenthumbgarden.com shall be transferred to Plaintiff.

(4)   Plaintiff is entitled to an award of attorneys' fees.  No later than December 12, 2016, Plaintiff shall submit a

---

[2] The proposed order submitted by Plaintiff also includes a proposed requirement that Defendant certify and detail his compliance with the injunction.  However, the Court finds that such a requirement is inappropriate considering the court supervision that would be necessary for enforcement.

declaration with the appropriate supporting materials detailing the fees requested.   Thereafter, the Court will issue a findings and recommendation regarding the award of attorneys' fees in this case.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, NOVEMBER 16, 2016.



Richard L. Puglisi
United States Magistrate Judge

**TRUE VALUE COMPANY vs. HILLS**; CIVIL NO. 16-00237 JMS-RLP; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF TRUE VALUE COMPANY'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT JOHN HILLS AND FOR ORDER OF PERMANENT INJUNCTION AND TRANSFER OF INFRINGING DOMAIN NAME