FORUM
ARBITRATION · MEDIATION · INTERNATIONAL

# DECISION

True Value Company v. JOHN HILLS / INTERNET LOCATIONS
Claim Number: FA1508001633289

## PARTIES

Complainant is **True Value Company** ("Complainant"), represented by **Christopher J. Schulte** of **MERCHANT & GOULD P.C.**, Minnesota, USA. Respondent is **JOHN HILLS / INTERNET LOCATIONS** ("Respondent"), Hawaii, USA.

## REGISTRAR AND DISPUTED DOMAIN NAME

The domain name at issue is **<greenthumbgarden.com>**, registered with **eNom, Inc.**

## PANEL

The undersigned certifies that he has acted independently and impartially and to the best of his knowledge has no known conflict in serving as Panelist in this proceeding.

Hon. Karl V. Fink (Ret.) as Panelist.

## PROCEDURAL HISTORY

Complainant submitted a Complaint to the FORUM electronically on August 13, 2015; the FORUM received payment on August 13, 2015.

On August 13, 2015, eNom, Inc. confirmed by e-mail to the FORUM that the **<greenthumbgarden.com>** domain name is registered with eNom, Inc. and that Respondent is the current registrant of the name. eNom, Inc. has verified that Respondent is bound by the eNom, Inc. registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On August 13, 2015, the FORUM served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of September 8, 2015 by which Respondent could file a Response to the Complaint, via e-mail to all entities and persons listed on Respondent's registration as technical, administrative, and billing contacts, and to postmaster@greenthumbgarden.com.

Also on August 13, 2015, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response, was transmitted to Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

A timely Response was received and determined to be complete on September 8, 2015.

On September 14, 2015, a timely Additional Submission was received from Complainant.

On September 14, 2015, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the FORUM appointed Hon. Karl V. Fink (Ret.) as Panelist.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the FORUM has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2.

## RELIEF SOUGHT

Complainant requests that the domain name be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

Complainant

Complainant's rights in the GREEN THUMB mark have been established through extensive registrations of the mark with the United States Patent and Trademark Office ("USPTO") (*e.g.,* Reg. No. 1,457,989 registered September 22, 1987). Respondent's disputed **<greenthumbgarden.com>** is confusingly similar to the GREEN THUMB mark in which Complainant has rights. The disputed domain name includes Complainant's mark in its entirety and merely adds the descriptive term "garden." The addition of the term "garden" does not distinguish the disputed domain name from Complainant's GREEN THUMB mark.

Respondent has no rights or legitimate interests in the disputed domain name. Respondent is not affiliated with Complainant, authorized to use the GREEN

THUMB mark in any context, or commonly known by the disputed domain name. Further, Respondent's use of the disputed domain name, to resolve to a website hosting generic click-through links to Complainant's competitors, is not a *bona fide* offering of goods or services or a legitimate noncommercial or fair use.

Respondent has registered and is using the disputed domain name in bad faith. Respondent attracts, for commercial gain, Internet users who are seeking Complainant's legitimate websites. In addition, Respondent had constructive or actual knowledge of Complainant's rights in the GREEN THUMB mark at the time of registration.

Respondent

Respondent's **<greenthumbgarden.com>** domain name is not identical to a trademark or service mark in which Complainant has rights. The **<greenthumbgarden.com>** domain name is broad in meaning and generic.

Respondent has rights and legitimate interests in the domain name because the domain name being parked is a universal process for domain names owned by Respondent and does not intentionally target Complainant. Further, the domain name being used is a generic term and phrase.

Respondent's domain is not being used in bad faith because the terms of the domain are generic.

Additional Submission from Complainant

Respondent's argument that the GREEN THUMB mark is generic is incorrect. While trademarks for generic words may not be registered with the U.S. Patent and Trademark Office, Complainant has registered and is the owner of over 25 U.S. Trademark Registrations and approved Applications for the GREEN THUMB trademark in connection with garden products. Further, Respondent is not using the GREEN THUMB mark in a generic sense. Rather, Respondent's use of the mark GREEN THUMB is in a trademark sense, to refer to a brand of garden supplies.

Respondent's contention that his registration of the **<greenthumbgarden.com>** domain name was not in bad faith because he was not aware of Complainant's GREEN THUMB mark is legally flawed. Parties are constructively on notice of a registrant's rights of a trademark listed on the

Principal Register of the USPTO. Complainant's GREEN THUMB mark has been a registered trademark since 1953. As of that date, which was over 40 years prior to Respondent's registration, Respondent was on constructive notice of Complainant's trademark rights.

Respondent admits that he engages in a practice of registering and monetizing domain names by creating "parking" pages. Engaging in patterns of registering domain names based on registered trademarks and monetizing them based on sponsored advertising constitutes bad faith registration. Respondent's constructive notice and admission demonstrate that he registered the **<greenthumbgarden.com>** domain name in bad faith.

Respondent's deliberate infringement of Complainant's rights in its GREEN THUMB mark in order to divert consumers to competitor websites offering similar products to generate pay-per-click constitutes classic cybersquatting. Transfer of the domain name is therefore appropriate.

## FINDINGS

For the reasons set forth below, the Panel finds Complainant is not entitled to the requested relief of transfer of the **<greenthumbgarden.com>** domain name.

## DISCUSSION

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and
(2) Respondent has no rights or legitimate interests in respect of the domain name; and
(3) the domain name has been registered and is being used in bad faith.

### Identical and/or Confusingly Similar

Complainant contends that its rights in the GREEN THUMB mark stem from registration of the mark with the USPTO (*e.g.,* Reg. No. 1,457,989 registered September 22, 1987). Panels consistently find that registration with a national trademark authority, such as the USPTO, is sufficient to establish a Complainant's rights in a mark. *See Paisley Park Enters. v. Lawson*, FA 384834 (Nat. Arb. Forum Feb. 1, 2005) (concluding that the complainant had established rights in the PAISLEY PARK mark under Policy ¶ 4(a)(i) through registration of the mark with the USPTO). The Panel therefore finds that Complainant has demonstrated its rights in the GREEN THUMB mark for the purposes of Policy ¶ 4(a)(i).

While Respondent contends that the **<greenthumbgarden.com>** domain name is comprised of common and generic/descriptive terms and as such cannot be found to be identical/confusingly similar to Complainant's mark, such a determination is not necessary under Policy ¶ 4(a)(i) as this portion of the Policy considers only whether Complainant has rights in the mark and whether the disputed domain name is identical or confusingly similar to Complainant's mark. *See Precious Puppies of Florida, Inc. v. kc,* FA 1028247 (Nat. Arb. Forum Aug. 10, 2007) (examining Respondent's generic terms arguments only under Policy ¶ 4(a)(ii) and Policy ¶ 4(a)(iii) and not under Policy ¶ 4(a)(i)); *see also Vitello v. Castello*, FA 159460 (Nat. Arb. Forum July 1, 2003) (finding that the respondent's disputed domain name was identical to complainant's mark under Policy ¶ 4(a)(i), but later determining the issue of whether the disputed domain name was comprised of generic terms under Policy ¶¶ 4(a)(ii) and 4(a)(iii)).

Complainant argues that Respondent's disputed **<greenthumbgarden.com>** domain name is confusingly similar to the GREEN THUMB mark in which Complainant has rights. Respondent's disputed domain name differs from the GREEN THUMB mark through the addition of the generic term "garden" and the generic top-level domain ("gTLD") ".com." Past panels have held that attaching a generic term to a mark does not alleviate the similarity between the mark and the domain name. *See Warner Bros. Entm't Inc. v. Rana*, FA 304696 (Nat. Arb. Forum Sept. 21, 2004) (finding that the addition of the generic term "collection" to Complainant's HARRY POTTER mark failed to distinguish the domain name from the mark). Panels have also found that the addition of the gTLD ".com" to a domain name is not relevant. *See Bank of Am. Corp. v. McCall*, FA 135012 (Nat. Arb. Forum Dec. 31, 2002) (holding that attaching a gTLD is "unable to create a distinction capable of overcoming a finding of confusing similarity"). Accordingly,

the Panel concludes that Respondent's **<greenthumbgarden.com>** domain name is confusingly similar to the GREEN THUMB mark.

Complainant has proved this element.

**<u>Rights or Legitimate Interests</u>**

Complainant must first make a *prima facie* case that Respondent lacks rights and legitimate interests in the disputed domain name under Policy ¶ 4(a)(ii), and then the burden shifts to Respondent to show it does have rights or legitimate interests. *See Hanna-Barbera Prods., Inc. v. Entm't Commentaries*, FA 741828 (Nat. Arb. Forum Aug. 18, 2006) (holding that the complainant must first make a *prima facie* case that the respondent lacks rights and legitimate interests in the disputed domain name under UDRP ¶ 4(a)(ii) before the burden shifts to the respondent to show that it does have rights or legitimate interests in a domain name); *see also AOL LLC v. Gerberg,* FA 780200 (Nat. Arb. Forum Sept. 25, 2006) ("Complainant must first make a prima facie showing that Respondent does not have rights or legitimate interest in the subject domain names, which burden is light. If Complainant satisfies its burden, then the burden shifts to Respondent to show that it does have rights or legitimate interests in the subject domain names.").

Respondent contends that it has rights and legitimate interests in the domain name because the domain name being parked is a universal process for domain names owned by Respondent and does not intentionally target Complainant. Past panels have held that using a disputed domain name to operate a parking website can be a *bona fide* offering of goods and services. *See Multicast Media Networks, LLC v. MDNH, Inc.*, FA 434268 (Nat. Arb. Forum Apr. 28, 2005) (finding that the respondent's use of the disputed domain name to operate a pay-per-click website from which Respondent derives revenue was considered a *bona fide* use within the meaning of Policy ¶ 4(c)(i), especially considering the extended period of such use). The domain name was created in 1999. The Panel therefore finds that, considering the extended period of the existence of the domain, Respondent's use of the **<greenthumbgarden.com>** domain name is a *bona fide* offering of goods or services.

Respondent also argues that the terms of the **<greenthumbgarden.com>** domain name are common and generic/descriptive, and therefore, Complainant does not have an exclusive monopoly on the terms on the Internet.

Complainant's GREEN THUMB mark was registered in 1987. The Concise American Heritage Dictionary copyright 1987 defines "green thumb" as "a knack for making plants grow well." The Panel agrees with Respondent, and finds that the "green thumb" is a term commonly used without intent to refer to Complainant; therefore, Respondent can establish rights or legitimate interests in the disputed domain name pursuant to Policy ¶ 4(a)(ii). *See Kaleidoscope Imaging, Inc. v. V Entm't,* FA 203207 (Nat. Arb. Forum Jan. 5, 2004) (finding that the respondent was using the <kaleidoscope.com> domain name for a *bona fide* offering of goods or services because the term was "generic" and respondent was using the disputed domain name as a search tool for Internet users interested in kaleidoscopes); *see also Qwest Commc'ns Int'l v. QC Publ'g Grp., Inc.*, FA 286032 (Nat. Arb. Forum July 23, 2004) (stating that "Complainant's rights in the QWEST mark are limited to its application to the tele-communications industry," where a variety of other businesses used the mark in unrelated fields).

Complainant has not proved this element.

## Registration and Use in Bad Faith

The Panel has found that Respondent has rights or legitimate interests in the **<greenthumbgarden.com>** domain name pursuant to Policy ¶ 4(a)(ii), and therefore also finds that Respondent did not register or use the disputed domain name in bad faith pursuant to Policy ¶ 4(a)(iii). *See Lockheed Martin Corp. v. Skunkworx Custom Cycle*, D2004-0824 (WIPO Jan. 18, 2005) (finding that the issue of bad faith registration and use was moot once the panel found the respondent had rights or legitimate interests in the disputed domain name); *see also Vanguard Group Inc. v. Investors Fast Track,* FA 863257 (Nat. Arb. Forum Jan. 18, 2007) ("Because Respondent has rights and legitimate interests in the disputed domain name, his registration is not in bad faith.").

Respondent contends that the **<greenthumbgarden.com>** domain name is comprised entirely of common terms that have many meanings apart from use in Complainant's GREEN THUMB mark. Moreover, Respondent contends that the registration and use of a domain name comprising such common terms is not necessarily done in bad faith. The Panel finds that a respondent is free to register a domain name consisting of common terms, and that the domain name currently in dispute contains such common terms. The Panel finds there is no evidence that Respondent was intentionally using the domain name to mislead

the public in any way. The Panel therefore finds that Respondent did not register or use the **<greenthumbgarden.com>** domain name in bad faith under Policy ¶ 4(a)(iii). *See Zero Int'l Holding v. Beyonet Servs.*, D2000-0161 (WIPO May 12, 2000) ("Common words and descriptive terms are legitimately subject to registration as domain names on a 'first-come, first-served' basis."); *see also Target Brands, Inc. v. Eastwind Group,* FA 267475 (Nat. Arb. Forum July 9, 2004) (holding that the respondent's registration and use of the <target.org> domain name was not in bad faith because the complainant's TARGET mark is a generic term); *see also Miller Brewing Co. v. Hong*, FA 192732 (Nat. Arb. Forum Dec. 8, 2003) (finding that because the respondent was using the <highlife.com> domain name, a generic phrase, in connection with a search engine, the respondent did not register and was not using the disputed domain name in bad faith).

Further, the Panel finds that Respondent has not violated any of the factors listed in Policy 4(b) or engaged in any other conduct that would constitute bad faith registration and use pursuant to Policy ¶ 4(a)(iii).

Complainant has not proved this element.

## Doctrine of Laches

The Panel also finds that the equitable doctrine of laches supports the denial of relief for Complainant. *See, e.g., Wiluna Holdings, LLC v. Michael Stadlin / IMS Internte Management Services GmbH,* FA1311001529658 (Nat. Arb. Forum January 13, 2014). The disputed domain name was registered in 1999, over 15 years prior to this proceeding. Any business disruption or confusion suffered by Complainant as a result of Respondent's domain name registration was either non-existent or minimal, or Complainant would have taken action earlier. Past panels have found that the principles associated with the equitable doctrine of laches may inform the panel in cases such as this. *See Square Peg Interactive Inc. v. Naim Interactive Inc.,* FA 209572 (Nat. Arb. Forum Dec. 29, 2003) ("Although laches by itself is not a defense to a complaint brought under the Policy, Complainant's delay in seeking relief is relevant to a determination of whether Respondent has been able to build up legitimate rights in the Domain Name in the interim, and whether it is using the Domain name in bad faith."); *Meat & Livestock Comm'n v. Pearce, D2003-0645* (WIPO Oct. 27, 2003) ("Although laches is not a defense in itself under the Policy, the absence of any

complaint over a long period of time in which domain names are in active use can suggest that such use does not give rise to a serious problem.")

## DECISION

Complainant not having established all three elements required under the ICANN Policy, the Panel concludes that relief shall be **DENIED.**

Accordingly, it is **ORDERED** that the **<greenthumbgarden.com>** domain name **REMAIN WITH** Respondent.

---

Karl V. Fink

Hon. Karl V. Fink (Ret.), Panelist
Dated: September 25, 2015

Above.com [ MONETIZATION AUTOPILOT ] DOMAIN REGISTRATION DOMAIN MARKETPLACE

Dashboard | Reports | Add | Remove | Manage Folders | Accounts | Jobs Queue | Conflicts | Verified Stats | Offers

Announcements [+] New!

**Getting Started Help**

**AutoPilot**
AutoPilot FAQ
Quick Start Guide
AutoPilot Manual
Video Tutorials

**Registrar**
Registrar FAQ
Registrar Manual
Registrar Settings

**Marketplace**
Max & Automated Bidding
Marketplace FAQ's

**Your Account Manager**



Liz Corona
Email
Skype Chat M-F
8am-4:30pm PST

**Tradeshows and Events**

**2017 Events**
15 - 17 Jan Affiliate Summit West Meet Market Table F6
22 - 25 Jan NamesCon 2017 Booth #29

## Reports

Period: Custom
From: 2012-01-01
To: 2017-01-17
Folder: -- All --
Group by: Domain
☐ Display domain demographics

Domains:
greenthumbgarden.com

From file: Choose File No file chosen

Columns:
☐ F1 ☐ Cost ☐ Comment ☑ Folder
☑ Hits ☑ Uniques ☑ Reported ☑ Clicks
☑ CTR ☑ nCTR ☑ EPC ☑ RPM
☑ nRPM ☑ MaxRevenue ☑ Revenue

Services:
☑ Totals ☐ DomainAdvertising ☐ Maximizer
☐ Redirect

Export | View Report

Show 100 Page 1 of 1

| | | | | Totals | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Name | Folder | | Hits | Uniques | Reported | Clicks | CTR | nCTR | EPC | RPM | nRPM | MaxRevenue | Revenue |
| | greenthumbgarden.com | DOMAINADVTISING | | 9299 | 462 | 336 | 0 | 0.00% | 0.00% | $0.00 | $36.37 | $26.45 | $0.00 | $12.22 |
| | | **Page Total:** | | **9299** | **462** | **336** | **0** | **0.00%** | **0.00%** | **$0.00** | **$36.37** | **$26.45** | **$0.00** | **$12.22** |
| | | **Overall Total:** | | **9299** | **462** | **336** | **0** | **0.00%** | **0.00%** | **$0.00** | **$36.37** | **$26.45** | **$0.00** | **$12.22** |

Schedule Reports
Scheduled Reports (0)

Other Reports
Missing Traffic (0)
DNS Report (0)

Report Tips
Helpful Videos